So why don't we proceed this morning with United States v. Castillo, 21-527. Thank you. Mr. Habib. Good morning. I am the District Court. Daniel Habib, Federal Attorney for the United States v. Castillo. The District Court committed procedural error by classifying Castillo's prior New York State conviction for attempted second-degree gang assault as a crime of violence under the sentencing guidelines for two independent reasons. First, the offense is a legal impossibility as a matter of New York law. Is that preserved? I mean, was that argument made in the District Court? Your Honor, Castillo argued below that his prior did not count as a crime of violence under the guidelines, including does it lack the necessary administrative. Granted, he did not present today's precise argument based on legal impossibility. But having properly presented the Federal claim below, he's not restricted to arguments made below, and he's entitled to present supplementary arguments in support of the same proposition. In addition, the question is purely one of law requiring an exact finding that involves the correct interpretation and application of the guidelines. So, in our view, this Court should review the question in due course. Can I ask you, along the lines of Judge Sack, I understand the argument that there is not a requisite mens rea, but your argument really goes beyond that, right? Your argument is much more, as I understood it, one that there's legal impossibility, that it's simply an incoherent crime, and therefore one cannot map the categorical approach onto an incoherent crime. That's exactly right. How does that match? How does that line up in terms of plain error and preservation with the argument that was raised in the District Court? I understand, Your Honor. Again, I concede we didn't present today's precise arguments in the District Court. It's our view that because the objection was made, including on the grounds of mens rea, that this argument should indeed be supplementary. But that said, this Court moves to plain error. I say and note that in this Court's decision in the Gil, which I think is the controlling precedent here, the legal incoherence argument was deemed, quote, clear-cut. It deemed so clear-cut that the panel reached the issue of suous content, and that was in the face not just of a plain error statement, but of a statutory exhaustion requirement. That is, the claim had not been presented to the Board of Immigration Appeals. Nonetheless, this Court reached and resolved the question in the non-citizen's favor. So on the merits, the New York Court of Appeals has said that legally impossible offenses, quote, do not exist in the penal law. A guilty plea to such an offense may rest on a hypothetical situation without objective basis. And in Gil, this Court said— It sounds to me it's a bit of a legal fiction in order to expedite a plea. I mean, isn't that how it's used? Even though it's impossible, but you arrange a deal with the government using it nonetheless. I mean, am I describing it correctly? You are describing it correctly, Your Honor. The New York public courts have said that pleading guilty to legally impossible crimes is accepted in order to facilitate plea bargains. And to help the defendant in— Well, Your Honor, I think to help both parties. Mr. Castillo secured a lower statutory sentencing rate. It's true that the government was relieved of its obligation to prove completed second-degree gang assault beyond a reasonable doubt. So I think both parties got something out of the deal. We're not arguing here that there's any conceptual or constitutional problem with New York State's practice of accepting a legally impossible plea. However, the federal consequences of such a plea presents a federal question. And Gill resolved that question by saying that legally impossible offenses, quote, demonstrate no clear mental state. Let me ask you about that. I understand how in Gill we would say there's no way you can describe the mental state or any part of the mental state. You can't intentionally be reckless. I understand that. But here it seemed to me that the problem that you're positing is how to map the intent requirement of attempt, not onto the first element, which is intent to cause injury, but mapping it onto the second element, which is that you actually caused serious physical injury. Why is it not enough, even if we agree with you that it is incoherent to attach attempt or the intent that would normally be required for intent onto the second element, why is it not enough that we can map it onto the first one and we say, well, look, we do know that this is a crime that requires an intent to cause physical injury and that would be enough? I would say a few responses, Your Honor. First, I would say that that's not, that partial mapping is not consistent with how your law combines intent. When I direct this court in particular to People v. Campbell, Campbell, like this offense, involved, the offensive issue of Campbell involved one element with intent, that is with intent to obstruct a peace officer, and one that lacked intent, causes injury to such a peace officer. People in Campbell made an argument very similar to what Your Honor has just posited. People argued that attempted second-degree assault under that provision could be sustained on the grounds that an intent to obstruct a peace officer could be ascertained. And the Court of Appeals rejected that argument. The Court of Appeals said you improperly shifted the emphasis from one element to the other, and the gravity of the offense is the proscribed result, the causation. And I guess I may not have explained my point. It's not so much that I'm suggesting that's the way we ought to construct New York law, but as you say, here we're dealing with the question of federal law, of how you map the categorical approach. And when we're mapping the categorical approach, my understanding is that we're trying to figure out, is there an element that matches at least, let's say for the purposes of this question, onto the force clause, the illness. Would it not be enough then if we determined that there is at least one element in this New York crime that satisfies the illness clause, even if there are additional incoherent elements? But if we can say, well, at a minimum, you know, he committed the crime. This is a bad analogy in any number of ways, but I was trying to think of some. But, you know, if you had a crime under New York law that said it's a crime to commit murder, to murder someone while being Napoleon, and we would say, well, being Napoleon is nonsense. That's not an element. Or you had something even more incoherent, you know, being Napoleon and not being Napoleon. And we would say, well, that's legally impossible. That's nonsense. You can't map anything onto that. But we can at least map onto the first element, which is committing murder. So I'm guessing, if you kind of get my drift there, if you had one element that we're able to discern and other elements that are just nonsense, why is it not enough under the elements analysis that we could at least, if we could, and I understand you have a backup argument saying that even if you map it on, this is, physical injury is not enough. But if you could map it onto the first element, why would that not be an acceptable mode of analysis? Right. So I would say at the outset that even if you can do as Your Honor has suggested, there's still a separate question of what happens, right? Absolutely. But to address Your Honor's question head-on, I think it is proper to look at Campbell and settle in more cases for how we answer this question because under the categorical approach, we look to state law to define the state law offense elements. And Campbell says not only would it be improper to shift the intent emphasis from one problem to the other, but it also says that, quote, the very essence of intent under New York law, which again is the source for the elements to which we apply the categorical approach, the very essence of New York law is the intent to cause a proscribed result, not some different intent, not some lesser intent. And the proscribed result of this offense is the causation of serious physical injury. That's the intent requirement that would be theoretically necessary to attempt the offense of second-degree hand assault, not something lesser and not something different. And I don't see any provision of New York law, no New York statute, no New York case, that tells us in the case of a legally impossible offense such as this one, we can do the sort of partial mapping that Your Honor has suggested and extract from what is, as Judge Scott pointed out, truly a legal fiction, truly a fiction designed to facilitate a plea bargain without objective basis. No source of New York law tells us we can do that sort of partial extraction of the man's rank. Can I maybe put a twist on a question for you? Let's assume for the sake of argument this were an assault law, and there probably is one under New York law and I just don't know which section of the code it is, that was framed in this way. With intent to commit physical injury, you commit physical injury. You actually cause physical injury. That's assault. Okay. So I assume that's the one we're talking about. And let's assume for the sake of argument that the degree of physical injury required, in our view, were enough to constitute use of force. That, it seems to me, you could map attempt onto that, and that would be a crime of violence. Why would that not be, in effect, a lesser included offense, one that you've necessarily committed if you commit attempted second degree assault, gang assault, under New York law? And if, in other words, if the irreducible core, the nugget, inside this crime that the defendant pled guilty to was a crime of violence, the only thing he could have pled more to in this legally impossible world is something more, something additional. Why do we not say, well, look, I get it. There's this crust of impossibility over it. But inside, at least, there's this nugget that we know is the crime of violence. Why is that not an acceptable, again, mode of analysis, knowing that you would not accept the premises? So I would say that, well, first I would say that the offense that your Honor has described, and mapping that to the facts of this case, attempting to commit the offense of intentionally causing physical injury would not rank as a crime of violence under the Guidelines because it would be a de-misdemeanor as a matter of New York law, punishing you by a maximum sentence of three months. So I think it would be sort of quite anomalous to determine the conduct that would be punishable by that low statutory maximum could apply for purposes of a two-year sentencing as here in the Guidelines. I think to the core of your question, though, is, I would say this. I just, I do not see New York law functioning in that way as to this particular offense, as to the class of legally impossible offenses. And so not only attempted second-degree gang assault, for example, attempted manslaughter, attempted felony assault, attempted felony murder. As I read the New York cases, those cases say, we can't ever posit the elements of these offenses. They just don't exist. And that's exactly what the Court of Appeals said in Martinez. Such an offense, quote, does not exist in the penal law. So any attempt to identify offense elements is doomed to incoherence because there simply is no state law source. Now we know, and the government agrees, that under the categorical approach, we start, step one, by identifying the state law elements. We can do that from a state statute, or we can do that from a state case. And Martinez tells us that no state statute, no codified statute in New York penal law, will tell you what the elements of attempted second-degree gang assault are. They just don't exist. Similarly, no New York case will tell you what the elements are. The only case that comes into the ballpark is Sesame Street. Indeed, all that case says is, due to the incoherence of specifically intended, unintended consequence, there is no crime. It's a legally impossible crime. And so what I'm suggesting is, and I think this is consistent with this Court's analysis in Gill, if we were to look to state law to define offense elements, and the government has introduced no state statute or state case that tells us what the elements are, indeed, the government hasn't even told us all of the elements of the prior argument before this Court, we'd be simply engaging in exercises hopelessly ambiguous. And under the categorical approach, it's the government's burden to prove an investment applies. It's the government's burden to do so, quote, with cert in these three courses. Could you turn briefly to your second argument? Yes, Your Honor. So if the Court disagrees, it's our backup argument that even a completed offense of second-degree gang assault is not a crime of the first degree. There is no argument, I take it, that that was waived? No, that was Christopher's point. That was Christopher's point. Yeah. And our argument really is based principally on this Court's decision to fill in the waiver. Was that overruled by Stokely and Scott or whatever it was? No, Your Honor. No, Your Honor, I'm sure. Scott made no reference to overruling fill in the waiver. But in contrast, Scott did indicate that the prior precedent for this Court, which was Nosti v. Ashcroft, had been abrogated, but said nothing to that effect about fill in the waiver. So are you relying on the footnote in fill in the waiver about Sears? Where did that come from? I read that opinion over and over. I don't get where that footnote came from. So I think where it came from, Your Honor, in judging it, you would know best. I think it came from – I actually read it several times. And I think it comes from an effort to reconcile the holding of that case with the Church of Nosti, which at that time was all life's work, so to speak. But at least the prior precedent that the panel felt compelled to keep. But the Church of Nosti had said that the Connecticut assault offense involving mere causation of injury was not a prior offense under 18 U.S.C. 16A. So the waiver footnote says we can reconcile our holding with that precedent because this offense, this Connecticut assault offense, requires the intent to cause serious physical injury, which is, quote, necessary. And let me also broadly frame it. It's not just footnote six, but I would also direct the Court to page 129 in the prior page, which addresses the dangerous instrument element. The Court locates the necessary violence both in the intent to cause serious physical injury and in the dangerous instrument element. And in addressing the latter element, the Court says, we know that the dangerous instrument supplies violence because it is capable of causing serious physical injury. So in that portion of the opinion as well, the requirement of serious physical injury is, indeed, the source of the records of violence in the Nosti case. Judge Sackler, if I may, I don't think Stoeckling has disturbed that holding. Stoeckling is a case concerning the force necessary for robbery. And Stoeckling locates the violence sufficient to satisfy the elements clause in the physical confrontation between robber and victim. It's that physical struggle that Stoeckling holds carries with it the potentiality for violence that's required. Here, of course, there is no such element. Indeed, as cases such as Marquez indicate, the victim needs not even be aware of the defendant or of the person taking the defendant. There simply is no physical confrontation, struggle element, certainly no overcoming resistance element, which is the key element that it should instill. All right. I think we have the benefit of your argument. We'll hear from the government.  Mr. Lugarajah. Good morning, Your Honors. It's great to be in court. My name is Shibola Lugarajah. I represent the government on this appeal. I also represented the government during the proceedings below. Your Honors, the district court correctly held that the defendant's entire conviction of attempted gang assault in the second degree is a crime of violence under the U.S. Census guidelines. And I'm going to start with some of Judge Marghini's questions. And I think thinking about the analytical framework used here is important. So I want to turn first to the analytical framework this court has previously used in attempt cases, and I want to start with TAP. So if you look at TAP, the TAP element in attempted crime, TAP first looked at the substance of the crime itself. And it looked at the complete crime and asked, what are the elements of the complete crime? So in looking at the elements of the complete crime, it found an element that would satisfy the categorical analysis. And then it looked at New York's definition of the TAP and whether or not New York's definition of the TAP was broader than generic TAP. And it found that it was not. And so, Your Honor, I believe that that analytical approach could be used by this court here. In fact, that's the approach that TAP used, and that could resolve this case. But turning to the analytical framework approached by the attorney, even if this court were to take up that approach, I think here we can, one, identify the elements, and, two, identify an element sufficient to satisfy the requirements of the court's clause. So that first element of the discussion I didn't even point out, which is the intent to cause physical injury, that's not legally impossible. What makes the crime legally impossible is the outcome. And no New York case that I have read, and I've read them closely, has said that you can't identify the elements. In fact, it's only by identifying the elements that you can tell that this crime is legally impossible. So what is that second element? When we're talking about the attempt version, isn't it intending to commit an unintended consequence? And, Your Honor, that is a legally impossible element. But the first element, intent to cause physical injury, that's not legally impossible. And, in fact, Campbell and Sissel and Gee and all the cases that have looked at this sort of crime have weighed or have said that it's only legally possible because there's an element of specific intent and an unintended result. So I guess the question is, the first element doesn't get you across the finish line, does it? Intending to commit physical injury on its own would not be enough, right? Right. And so now that I'm on intent, and New York defines it, intent requires you to become dangerously close to completing the offense. With that intent, I think you can fairly say that one attempts to use physical force. And, Your Honor, if I may, that's distinct. That's distinct from the type of crime that's at issue in Gill. In Gill, there's a very— I'm sorry, if I can just back you up. You're saying that just the intent gets you that close? I would have thought that you would say that you need at least part of the second element, which is the cause of the injury. So you need to not only intend to do it, but you need to attempt to cause the injury. Your Honor, if I wasn't clear about that, that's absolutely right. So it's intent plus what New York requires under intent. Because the intent alone, I mean, maybe you could do that if you had a pure conspiracy. I mean, I suppose if there was no overt act agreement under New York law and you had two people who shared an intent, you know, maybe the intent would carry you there as long as there was a shared agreement. But you need something beyond that. And I guess that's what I'm wondering is, I think your opponent's argument is when you get to that second argument, the second element, it just doesn't—there's nothing there. You need to intend to commit all of the parts of the crime. That's the argument. Your Honor, if I may, I think it's intent plus how New York defines attack. Right? So New York defines attack as something dangerous and close to committing the crime. So it suggests that somehow, you know, that's what taps that into analyzing the New York intent statute. So it's not just the intent alone, but what New York requires under the intent statute. And I guess the question is how do you map that on, right? Dangerously close to what? Dangerously close to, and you might say, dangerously close to causing serious physical injury. The problem is that New York has already said that that is something by definition you don't intend to do. Your Honor, I submit that by using—by intending to use physical force and taking some step towards that, you are attempting to use physical force, even if your intention is not to cause the unintended result here, which is serious physical injury. There is some level of force being used when you map around the intent clause onto the intent—the intent—how New York defines intent onto the intent clause. Could you—could you back up just a little bit for me and just ask the initial question about plain error and whether this was waived? And Mr. Havid points us to Gill. What's your response to that? Your Honor, certainly the argument about whether or not the attempted— attempted gang assault was technically a crime of violence or not was preserved before the district court. It was argued before the district court, but this specific argument was not raised before the district court. So what Mr. Leib says is that Gill doesn't require that the specific argument be raised, and that's particularly so with respect to our appellate review if it presents a matter of—you know, it's a purely legal matter, and obviously it seems to be that—to qualify as that. So what's your response to that? Your Honor, there—I think as a rule of thumb, this Court has said that there are good reasons for not giving up arguments from the first time on the field. For example, you don't have the evidence that's just available that's going to come up in this particular question. There might be other things that might have gone into the record if this argument was—was raised below. But it's still well noted in this 986, F-300, 200. It's completely within the panel's discretion to push it up or not. But there are good reasons here, isn't it, Your Honor? Well, can you just maybe tell us how did Gill arise? I mean, it wasn't a criminal case, right? It was a crime—the question was whether it was a crime of moral turpitude, right? That's correct. It's an immigration case. Immigration case, right? That's correct. You know, we're in a criminal context, right? That's correct. So now we're governed specifically by Rule 52. I mean, play an error. This is not just some judge-made thing we're doing here, right? So we're constrained by Rule 52. And I'm just wondering what was the— what was the law governing the rules of issue preservation in an immigration context and how does that map or not map? I don't know. When we're dealing with play an error, Rule 52, Olano, the Supreme Court's, you know, four-prong test. Your Honor, my understanding is, again, that the issue was preserved in terms of the overall question. The mens rea issue. Exactly. And the question is whether or not this panel should take that one. And that's in the panel's expression under state law. Okay. Your Honor, if I may briefly turn to the second part of the green slide by the appellant. Here, Your Honor, I believe that Stokelyn clearly answers the question of whether or not physical injury is enough to meet the requirements of the force clause. And I understand the argument that Stokelyn dealt with a robbery crime. And I would submit that the analysis of the force clause there permeated the entirety of the force clause, not just the robbery offenses. And that's exactly what the seventh circuit held above them. And Your Honor, I don't see that my time is up. No, keep going. That's exactly what the second circuit said above. And they used Stokelyn's analysis to analyze Indiana's bodily injury requirement, which is similarly awarded to the requirements of what physical injury under New York state law is. And I would submit, Your Honor, that New York state actually sets a higher force than what Stokelyn set for the force clause. And so New York sets a higher force for physical injury. So this is with respect to the force clause? Yes. Okay. And lastly, Your Honor, if I may, I'm filling the wave up. Putting that to safety, Your Honor, I believe doesn't resolve this particular issue. First, the question of New York being a law wasn't an issue in filling the wave up. Second, the specific question as to the distinction between physical injury and serious physical injury wasn't precisely presented to that panel. And finally, just like the – So you're suggesting that this is all dicta? Correct. And finally, Your Honor, just like filling the wave up recognizes that the Krasnowski panel didn't have the benefit or the wisdom to pass on it, I would submit that the filling the wave up panel didn't have the – didn't benefit from the wisdom. Okay. If there are no further questions, Your Honor, it is the government that has that. The judge and the district court are adjourned. Thank you. Thank you. Mr. Beal. May I make two brief points? Of course. Judge Nardini, in response to your questions about the preservation of legal status for Beal, the answer is they were far more stringent than the rules you applied to this court because Beal, a petition for review and order of removal, was subject to a statutory exhaustion requirement, which would require a presentation before the agency. In addition, the preservation in Beal was inferior to that here in that Beal in this court did not present the legal impossibility argument. Nonetheless, the panel – We raised it in sua sponte. This court raised the issue sua sponte because it was so clear cut that a legally impossible crime demonstrates no clear mental state. Second, Judge Nardini, on the question of what elements of this offense exist, I'm standing here on your level in the Court of Appeals, and the government has not told us what the elements of Castillo's prior offense are. And that's not through any deficiency on the government's part. It's a consequence of the incoherence of this offense as a matter of New York law. If the government cannot tell us what the elements of the prior are, the government simply cannot have it's burden to demonstrate with certainty that Castillo's prior convictions were for a crime of violence under the documents. Let me ask the government a question. Is the government aware of how many of these cases involving possible legal impossibility under New York law are, you know, before the district courts? Your Honor, I'm not aware of a precise number, but I should imagine that there are quite a few. For example, the crime of the issue with Scott was precisely this type of crime. For instance, if you were to agree with the appellate detective manslaughter, this is what the court did about the manslaughter, the completely common manslaughter, that would no longer be a crime of violence. So you're saying, in your experience, it is common? That's correct. And, Mr. Shabib, would you agree with that? You may not know. I don't agree, Your Honor. You know, in several years of doing criminal appeals in this court, this is the first time I've seen this issue presented. So, no, I don't. Again, I don't gather candor with counsel. Oh, yeah, yeah, of course. It's just, it's not my experience. All right. Thank you very much. Very well. Reserved decision.